# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 15-327V
Filed: August 22, 2017

| | |
|---|---|
| * * * * * * * * * * * * * * | * |
| PHILIP POWER and APRIL POWER, | *   UNPUBLISHED |
| *As the Parents and Natural Guardians of* | * |
| *C.P., a Minor*, | * |
| | *   Decision on Attorneys' Fees and Costs; |
| Petitioner, | *   Respondent Does Not Object. |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| * * * * * * * * * * * * * * | * |

*Mark Sadaka, Esq., Mark T. Sadaka, LLC, Englewood, NJ, for petitioner.*
*Camille Collett, Esq., U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On March 30, 2015, Philip and April Power ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program[2] on behalf of their minor child, C.P. Petitioners alleged that shortly after receiving a measles-mumps-rubella ("MMR") vaccine on April 12, 2012, C.P. suffered encephalopathy and behavioral changes. *See* Petition ("Pet."), ECF No. 1. On January 6, 2017, petitioners filed a motion to dismiss the petition. Motion,

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)).  In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision.  If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

ECF No. 46. On January 9, 2017, the undersigned issued a Decision dismissing the petition. *See* Decision, ECF No. 47. Petitioners now seek an award of attorneys' fees and costs in the amount of $41,116.03, pursuant to Section 15(e) of the Vaccine Act. Motion for Fees, ECF No. 51. After careful consideration, the undersigned has determined to **grant the request in full** for the reasons set forth below.

### I. Procedural History

The petition was filed on March 30, 2015.[3] ECF No. 1. This case was initially assigned to now-Chief Special Master Dorsey. ECF No. 4. On April 8, 2015, petitioners filed medical records (Pet. Ex. 1-7) via CD. ECF No. 7. The initial status conference was held on April 21, 2015; petitioners were ordered to file outstanding medical records by April 30, 2015. Scheduling Order, ECF No. 8.

After requesting and receiving two extensions of time ("MFET"), petitioners filed additional medical records on June 4, 2015. First MFET, ECF No. 9; Order, ECF No. 10; Second MFET, ECF No. 11; Order, ECF No. 12; Pet. Ex. 8, ECF No. 13. Petitioners then requested and received two additional extensions of time before filing additional medical records on July 15 and July 21. Third MFET, ECF No. 14; Order, ECF No. 15; Fourth MFET, ECF No. 16; Order, ECF No. 17; Pet. Ex. 9, ECF No. 18; Pet. Ex. 10, EC No. 19. Petitioners filed their Statement of Completion on July 28, 2015. ECF No. 20.

On August 27, 2015, respondent filed a status report ("Res. S.R.") indicating that he had identified medical records that remained outstanding, and had communicated this list to the petitioners. Res. S.R., ECF No. 21. Petitioners were ordered to file the outstanding medical records by September 28, 2015. Respondent was ordered to file a status report listing the outstanding records requested. Scheduling Order, ECF No. 22. On September 1, 2015, respondent filed a status report stating that he had requested that petitioners file "any IEP evaluations and neuropsychiatric testing, any psychology referrals, and [C.P.'s] birth records." Res. S.R. at 1, ECF No. 23.

On September 28, 2015, petitioners filed a motion for extension of time until October 28, 2015, to file the outstanding medical records; this request was granted. Fifth MFET, ECF No. 24; Order, ECF No. 26. Petitioners also filed a status report ("Pet. S.R.") advising that C.P. did not have a formal IEP evaluation or an IEP in place, but did have medical accommodations in the classroom. Pet. S.R. at 1, ECF No. 25. Petitioners further advised that the records of C.P.'s only neuropsychiatry evaluation had been previously filed as Pet. Ex. 5, and that C.P had been seen by a psychologist who had since relocated and could not be found. *Id*. Finally, petitioners advised that C.P.'s birth records had been requested and would be filed once they were received. *Id*. at 2.

---

[3] According to the billing records, Mr. Sadaka undertook representation of the petitioners in November of 2012, seven months after C.P. received the allegedly causal MMR vaccine. Motion for Fees, Ex. A at 1. Between November of 2012 and March of 2015, Mr. Sadaka's firm spent 28.1 hours reviewing C.P.'s medical records before drafting and filing the petition. *Id*. at 1-6. On April 1, 2015, two days after filing the petition, Mr. Sadaka discussed this matter with a potential expert. *Id*. at 7.

2

This case was reassigned to me on October 21, 2015. ECF No. 27. On October 28, 2015, petitioners filed a motion for authority to issue a subpoena, which was granted. Motion, ECF No. 29; Order, ECF No. 30. Petitioners filed C.P.'s birth records (Pet. Ex. 11) out of time on November 5, 2015, along with a Statement of Completion.[4] ECF Nos. 31, 32.

A status conference was held on November 20, 2015; respondent was ordered to file his Rule 4(c) Report by January 19, 2016. Scheduling Order, ECF No. 33. Petitioners were ordered to file an expert report by March 21, 2016. *Id.*

Respondent filed his Rule 4(c) Report on January 19, 2016, stating that this matter was not appropriate for compensation. Resp. Rpt. at 1, ECF No. 37. Petitioners requested and were granted three extensions of time to file their expert report.[5] Sixth MFET, ECF No. 39; Non-PDF Order, issued Mar. 21, 2016; Seventh MFET, ECF No. 30; Non-PDF Order, issued May 20, 2016; Eighth MFET, ECF No. 41; Non-PDF Order, issued Jul. 19, 2016. On September 2, 2016, petitioners filed a Motion for Extension of Time until November 1, 2016, to file their expert report. Ninth MFET, ECF No. 42. During a status conference held on September 22, 2016, petitioner's counsel admitted that he had not been able to obtain an expert. The undersigned ordered petitioners to file an expert report, a motion for a ruling on the record, or a motion for a dismissal decision by November 21, 2016. Scheduling Order, ECF No. 43. On November 21, 2016, petitioners filed a status report requesting until January 5, 2017, to file a motion for a ruling on the record; this request was granted. Pet. S.R., ECF No. 44; Non-PDF Order, issued Nov. 21, 2016.

On January 6, 2017, petitioners filed an out of time motion to dismiss the petition along with statements from each petitioner. Pet. Ex. 14-15, ECF No. 45; Motion to Dismiss Petition, ECF No. 46. The undersigned issued a dismissal decision on January 9, 2017. Decision, ECF No. 47.

On July 19, 2017, petitioners filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 51. Petitioners request attorneys' fees in the amount of $36,519.21, and attorneys' costs in the amount of $4,596.82, for a total amount of $41,116.03. Motion for Fees, Ex. A, at 21-23. In accordance with General Order #9, petitioners' counsel represents that petitioners did not incur any out-of-pocket expenses. Statement, ECF No. 50.

On August 9, 2017, respondent filed a response to petitioners' Motion for Fees. Response, ECF No. 52. Respondent provided no specific objection to the amount requested or hours worked, but instead, "respectfully recommend[ed] that the Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 3. Specifically, respondent did not raise the issue of reasonable basis, and has therefore waived any argument on that issue.

Petitioners filed a reply on August 9, 2017, reiterating their request for an award of attorneys' fees and costs. Reply, ECF No. 53. This matter is now ripe for decision.

---

[4] At this juncture, Mr. Sadaka had been representing petitioners for three years.

[5] In June of 2016, after requesting and receiving two extensions of time for petitioners' expert report, Mr. Sadaka's firm billed 26 hours for reviewing medical records. Motion for Fees, Ex. A, at 17.

## II. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## III. Discussion

**A.     Reasonable Hourly Rate**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

In this case, Mr. Sadaka's firm is located in Englewood, NJ, which is just outside of New York City. Special masters have consistently awarded forum rates to legal professionals practicing in the greater New York City area. *See, e.g.*, *Shell v. Sec'y of Health & Human Servs.*, No. 13-692V, 2016 WL 6081829 (Fed. Cl. Spec. Mstr. Sep. 21, 2016) (finding Englewood, NJ to be part of the New York City metro area and therefore entitled to forum rates). Therefore, forum rates apply in this case.

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[6]

The requested hourly forum rates are consistent with the rates previously found to be reasonable in cases involving petitioners' counsel and his staff. *See e.g.*, *Jones v. Sec'y of Health & Human Servs.*, 12-875V, 2017 WL 20161471 (Fed. Cl. Spec. Mstr. Apr. 18, 2017); *Siciliano v. Sec'y of Health & Human Servs.*, 15-253V, 2017 WL 1174449 (Fed. Cl. Spec. Mstr. Feb. 21, 2017). Therefore, the undersigned finds the requested rates to be reasonable.

**B.   Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

---

[6] The fee schedules are posted on the Court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys -Forum-Rate-Fee-Schedule2015-2016.pdf (last visited August 17, 2017); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2017*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2017.pdf (last visited August 17, 2017).

Upon review of petitioner's application, the number of hours expended in this case appears to be reasonable. Therefore, the undersigned awards the requested attorneys' fees.

**C.     Reasonable Costs**

Petitioner requested a total of $4,596.82 in attorneys' costs, including $3,400.00 in expert fees and $782.00 in costs associated with obtaining medical records. *See* Motion for Fees, Ex. A, at 22-23. The undersigned finds petitioner's requested costs to be reasonable.

## IV. Total Award Summary

Based on the foregoing, the undersigned **awards the total of $41,116.03**,[7] representing reimbursement for attorneys' fees in the amount of $36,519.21 and costs in the amount of $4,596.82, in the form of a check made payable jointly to petitioners and petitioners' counsel, Mark Sadaka, Esq. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[7] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.